## UNITED STATES v. SCOTT.

### No. 5775.

Circuit Court of Appeals, Sixth Circuit.

June 9, 1931.

David Hanover, of Memphis, Tenn. (Lindsay B. Phillips, of Memphis, Tenn., James T. Brady and Bayless L. Guffy, both of Washington, D. C., and J. M. Nixon, of Nashville, Tenn., on the brief), for the United States.

Geo. J. Coleman, of Memphis, Tenn., for appellee.

Before DENISON and HICKS, Circuit Judges, and SIMONS, District Judge.

SIMONS, District Judge.

Suit upon an insurance contract issued under the War Risk Insurance Act. From judgment for plaintiff upon verdict, defendant appealed.

Appellee entered the army May 12, 1917, was commissioned second lieutenant on August 16th of the same year, and discharged as first lieutenant November 30, 1918, by reason of demobilization. While in the military service of the United States, he was granted a contract of war risk term insurance in the sum of $10,000, payable to him in monthly installments of $57.50 in the event he became permanently and totally disabled while the contract was in force. No premiums were paid on the contract subsequent to plaintiff's discharge, and, allowing for the days of grace for payment of premiums, the contract expired at midnight on January 1, 1919, unless the plaintiff became permanently and totally

774

disabled before that time. Petition alleges that, at the time of discharge, or immediately thereafter, the assured was permanently and totally disabled; that while serving in the army he contracted dementia præcox.

Regulation No. 11, promulgated by the Bureau of War Risk Insurance March 9, 1918, by virtue of the authority conferred by section 13 of the War Risk Insurance Act (40 Stat. 399), defines "total disability" as "any impairment of mind or body which renders it impossible for the disabled person to follow continuously any substantially gainful occupation." By the same regulation total disability is "deemed to be permanent, whenever it is founded upon conditions which render it reasonably certain that it will continue throughout the life of the person suffering from it."

■ Proof was presented that at the time the plaintiff went into the Army in 1917 his physical and mental condition was good. He had been a student at Vanderbilt University, and a star football player. Upon his discharge from the Army on November 30, 1918, changes were noted by those with whom he came in contact. He was nervous and not interested in anything. He would not answer questions coherently, and walked around without saying anything. At one time he became so hysterical that his mother called upon the cashier of the local bank for help. Dr. Lackey, who saw him a week or ten days after his return from the army, observed that he was not like his former self, that he did not want to talk to anybody, and would stand for a long time on the street and make faces and gestures; that he noticed him once out in the yard drilling, and concluded that he could not have pursued a gainful occupation. Two other physicians observed nervous symptoms of dementia præcox, which they recognized almost immediately after his discharge. One of them, Dr. Sanford, testified that he was nervous, his mouth twitched around to one side, and that his nervousness and facial expressions and characteristics were those of an insane person, and that it was his belief that Scott was insane at the time he saw him when he came back from the Army. Some time after his discharge Scott took a notion that he wanted to go to Alaska. He stayed in Alaska for several months, and then returned on money furnished to him by his father; that he was no better, and probably worse, when he returned home. Some time thereafter he was taken by Dr. Sanford to Mayo Bros. Clinic at Rochester, Minn., for examination. The conclusion there reached

was that he had dementia præcox, and that it was incurable. Later Scott was admitted to the United States Veterans' Hospital at Little Rock, Ark., and it is conceded by the defendant that from April 28, 1923, he has been permanently and totally disabled.

The only evidence produced by the defendant, in answer, was to the effect that the plaintiff had worked from January 1, 1920, to September 7, 1920, as a clerk at the United States Marine Hospital in New Orleans at a salary of $95 per month; that thereafter, from September 22, 1920, to June, 1921, he had been a student at Tulane University, New Orleans, and had obtained satisfactory grades in all subjects except mathematics.

The regulations defining permanent and total disability have been frequently construed by the courts. It has been held that ability to continuously follow a substantially gainful occupation implies ability to compete with men of sound mind and average attainments under the usual conditions of life, United States v. Cox (C. C. A.) 24 F.(2d) 944; that the words "total and permanent" as applied to disability do not necessarily imply an incapacity to do any work at all, United States v. Eliasson (C. C. A.) 20 F.(2d) 821; Angelle v. United States (C. C. A.) 31 F.(2d) 245; United States v. Acker (C. C. A.) 35 F.(2d) 646; that, while the burden is on the plaintiff to prove total permanent disability, and that such disability arose during the life of the policy, mere inability on his part to prove the exact time when the disability occurred, if it began during the life of the policy, is not fatal, La Marche v. United States (C. C. A.) 28 F.(2d) 828. It cannot be said that as a matter of law employment of a man of appellee's training for nine months in a minor clerkship is conclusive proof that he is able to follow continuously a substantially gainful occupation.

It is urged that the court below erred in refusing to sustain a motion for a directed verdict, for the reason that there was no material substantial evidence to support the findings of the jury, and reliance is placed upon the case of United States v. Cole, 45 F.(2d) 339, decided by this court November 7, 1930. The Cole Case was reversed because of deficiency in proof of the determinative features of the case which might be supplied upon another trial. There was no such failure of proof in the case at bar. The fact issue was properly submitted to the jury, and there

was substantial evidence to sustain its verdict.

■ The remaining assignments of error are without merit. This court will not determine the weight of evidence nor the credibility of witnesses. The failure to give an instruction to the effect that there was no evidence that the plaintiff was permanently and totally disabled within the definition of the regulation herein quoted would be error only if the court was in error for failure to direct a verdict in favor of the defendant. If the court was right in refusing to direct the verdict, it was right in refusing to give the instruction. We think the evidence of total and permanent disability within the life of the policy was substantial, and the judgment is affirmed.