## HAPPY v. UNITED STATES.

### No. 42.

District Court, W. D. Kentucky, Paducah Division.

Oct. 31, 1941.

Henry F. Turner, and Turner & Turner, all of Paducah, Ky., for plaintiff.

Eli H. Brown, III, U. S. Atty., of Louisville, Ky., for defendant.

MILLER, District Judge.

This action was brought by the plaintiff Cora Elizabeth Happy, mother and administratrix of the decedent Sam Roberts Happy, and also the named beneficiary in the policy of insurance herein sued upon, to recover of the defendant United States of America under a Government life insurance policy insuring the life of Sam Roberts Happy in the amount of $10,000. Sam Roberts Happy died on April 2, 1934. The action was filed on January 2, 1940. The Government contends that the insurance was not in effect at the time of the insured's death. The parties waived a jury trial and the matter was heard by the Court.

### Findings of Fact

Sam Roberts Happy was inducted into the United States Navy on July 10, 1918, and remained in the service until he was honorably discharged on September 30, 1921. While in the service he applied for and was granted on July 30, 1918, War Risk Term Insurance in the amount of $10,000. This term insurance was kept in force by payment of monthly premiums through September, 1925. On October 1, 1925, the insured converted the full amount of such insurance into a twenty payment life policy which was issued to him on October 1, 1925, being policy No. K–493714, and the one herein sued on. This converted policy was kept in force by the payment of premiums through August, 1932. No premiums were paid after August 31, 1932. Thereafter the United States, pursuant to the terms of the insurance contract, cancelled an indebtedness against the policy in the amount of $1,226.34, leaving the face amount of the policy as $8,773.66, which insurance was extended until October 11, 1933. The policy provided as follows: "Upon due proof of the total permanent disability of the insured while this policy is in force, the monthly installments shall, except as hereinafter provided, be payable to the insured and continue to be so payable during total permanent disability so long as he lives, and payment of all premiums due after receipt of such proof during total permanent disability shall be waived." It further provided: "Total permanent disability as referred to herein is any impairment of mind or body which continuously renders it impossible for the disabled person to follow any substantially gainful occupation and which is founded upon conditions which render it reasonably certain that it will continue throughout the life of the person suffering from it. * * * Without prejudice to any other cause of disability, it is agreed that the irrecoverable loss of the sight of both eyes, or the loss of both hands, or the loss of both feet, or the loss of one hand and one foot, shall be considered as total permanent disability within the meaning of this contract; * * *."

The insured Sam Roberts Happy was before the war a very successful traveling salesman for a house dealing in silks, rayons and woolens. After his discharge from the military service he resumed his occupation as a traveling salesman until about the first part of the year 1933, at which time he severed his connection with his employer, went to Dallas, Texas, and opened a hosiery shop. This business enterprise was unsuccessful and he was out of employment for a short period of time immediately prior to May 31, 1933. On May 31, 1933, he suffered an accident to his right arm while traveling on a train. There was no injury to the bone structure, but the use of the arm was completely lost through paralysis of the muscles. There was no injury to the head or to other parts of the body, nor was there any evidence of any disease. The insured became depressed in spirits, slovenly in his appearance, suffered melancholia, and for some time made no effort to engage in any occupation. He was not examined or treated for any mental disorder. He was able to visit the business section of the city of Mayfield, Kentucky, where he lived, when he desired; to loaf in stores and talk to his friends. About September, 1933, he made a trip alone to Dallas, Texas, where he visited his brother for three or four months. At the end of that time he returned to Mayfield, Kentucky, again making the trip alone. In the early part of March 1934 he went to New York with his brother to look for employment and stayed at the Hotel Martinique. He secured a job as a traveling salesman, but did not enter upon the duties of this employment as he was attempting to get another line of goods from a former employer. He remained at the hotel for about three or four weeks, during which time he did considerable drinking and died at the hotel on April 2, 1934. The cause of his death was acute alcoholism. At the time of his death he was approximately 36 years of age. It is admitted by the parties that claim under the policy was made on July 9, 1934, and was finally denied by the Veterans' Administration on October 9th 1939.

## Conclusions of Law

In order for the plaintiff to recover in this action it is necessary for her to establish by the evidence introduced that the deceased insured became permanently and totally disabled during the time the policy of insurance remained effective under the provision extending the protection until October 11, 1933. If the disability prior to October 11, 1933, was either total but temporary or permanent but partial, it would not be sufficient to prevent the policy from lapsing after that date. Accordingly, if the insured deceased became totally and permanently disabled but such condition did not exist until after October 11, 1933, recovery must be denied.

Total disability does not mean helplessness or complete disability, but it includes more than that which is partial. Lumbra v. United States, 290 U.S. 551, 54 S.Ct. 272, 78 L.Ed. 492; United States v. Hodges, 6 Cir., 74 F.2d 617; United States v. Middleton, 6 Cir., 81 F.2d 205. It is well settled that the loss of use of one arm or one leg is not total and permanent disability within the meaning of the phrase as used in a government policy. United States v. Adcock, 6 Cir., 69 F.2d 959; United States v. Mayfield, 10 Cir., 64 F.2d 214; Thompson v. United States, 8 Cir., 65 F.2d 897; Miller v. United States, 5 Cir., 71 F.2d 361; United States v. Harris, 4 Cir., 66 F.2d 71; Magenton v. United States, 8 Cir., 75 F.2d 410. The provisions of the policy itself refute any claim that the loss of one arm or one leg constitutes total and permanent disability, in that it specifically provides that the loss of both hands, or the loss of both feet, or the loss of one hand and one foot shall be considered as total permanent disability within the meaning of the contract.

It remains to consider whether or not the insured's mental condition was such as to render him totally and permanently disabled. Several of the medical witnesses for the plaintiff testified that in their opinion the insured was unable to engage in any occupation which required mental activity because of the melancholia and depression which settled upon him following the injury to his arm. In their opinion the insured was totally and permanently disabled. But it is to be noted that these doctors were general practitioners and not experts in mental disorders, made no tests to determine the existence or extent of any existing mental disturbance, and drew their conclusions solely from their observation of his conduct as they might chance to meet him. It is well settled that the opinions of expert witnesses upon subjects of common knowledge are not conclusive and have no more probative value than the opinions of other witnesses. Equitable Life Assurance Society v. Burns, 254 Ky. 487, 71 S.W.2d 1009; Dossenbach v. Reidhar's Executrix, 245 Ky. 449, 53 S.W. 2d 731; United States v. Spaulding, 293 U. S. 498, 506, 55 S.Ct. 273, 79 L.Ed. 617. It is most significant in this case that these same doctors did not at that time prescribe any treatment for any mental disturbance, but confined their professional treatments to the attempted rejuvenation of the muscles of the injured arm. The fact that the insured did not work is not decisive; the real issue is whether or not the insured was able to work. If an insured is able to be gainfully employed, but remains idle from choice, he is not totally and permanently disabled. Aetna Life Ins. Co. v. McCullagh, 191 Ky. 226, 229 S.W. 1033. The fact that the insured was physically sound with the exception of the injured arm, that he was able to travel alone, and that he eventually decided to resume work and succeeded in making a connection for that purpose, leads to the conclusion that although he was permanently and partially disabled and temporarily depressed, as any normal person would be, by reason thereof, such disability was not total within the meaning of the policy. This conclusion is strongly supported by the fact that the insured himself made no claim for disability benefits under the policy during his lifetime. See Lumbra v. United States, 290 U.S. 551, at page 560, 54 S.Ct. 272, 78 L.Ed. 492; United States v. Spaulding, 293 U.S. 498, at page 506, 55 S.Ct. 273, 79 L.Ed. 617; United States v. Hodges, 6 Cir., 74 F.2d 617, at page 618; United States v. Middleton, 6 Cir., 81 F.2d 205, at page 206; United States v. Kusch, 6 Cir., 110 F.2d 955, at page 959. The facts in this case present a situation very similar to the disability existing in each of the following cases, in each of which the Court held that although the disability was permanent it was partial instead of total and so denied recovery. United States v. Braden, 6 Cir., 92 F.2d 682; United States v. Kusch, 6 Cir., 110 F.2d 955; Aetna Life Insurance Company v. McCullagh, 191 Ky. 226, 229 S.W. 1033; Columbia Casualty Co. v. McHargue, 246 Ky. 93, 54 S.W.2d 617; Equitable Life Assurance Society v. Burns, 254 Ky. 487, 71 S. W.2d 1009; Mutual Life Insurance Co. v. Dause, 256 Ky. 448, 76 S.W.2d 233; Davis

v. New England Mutual Life Insurance Co., 263 Ky. 568, 92 S.W.2d 822.

Accordingly, the Court finds as a matter of law that the insured deceased was not totally and permanently disabled on or before the date when the policy lapsed for the non-payment of premiums, and the petition is dismissed.