## UNITED STATES v. WARREN.

### No. 11112.

Circuit Court of Appeals, Eighth Circuit.

July 5, 1938.

Keith L. Seegmiller, Atty., Department of Justice, of Washington, D. C. (Clinton R. Barry, U. S. Atty., of Fort Smith, Ark., G. W. Hendricks, Sp. Asst. to U. S. Atty., of Little Rock, Ark., Julius C. Martin, Director, Bureau of War Risk Litigation, of Washington, D. C., and Fendall Marbury, Sp. Asst. to Atty. Gen., on the brief), for the United States.

S. E. Gilliam, of El Dorado, Ark. (Robert A. Kitchen, of El Dorado, Ark., on the brief), for appellee.

Before GARDNER, SANBORN, and THOMAS, Circuit Judges.

THOMAS, Circuit Judge.

This is an action at law to recover disability benefits under a policy of war risk insurance. The case was tried before a jury, and judgment entered upon a verdict for plaintiff. The government brings this appeal, assigning as error the court's refusal to direct a verdict in its favor. The single question to be decided here is whether the evidence is sufficient to support the jury's finding that the total permanent disability of the insured arose prior to the lapse of the policy on June 30, 1919.

Appellee is the wife of Si Tom Warren, the insured, and brought this action in her capacity as his guardian. The insured has been confined in the Veterans' Hospital at Little Rock, Arkansas, since May, 1929, as an incompetent, suffering from dementia præcox. The government does not deny that he has been totally and permanently disabled since that time.

The evidence shows that insured entered the army July 6, 1918, at the age of 29, and was honorably discharged May 23, 1919. He owned a farm and his occupation was farming. On February 18, 1919, while overseas he was admitted to a hospital with a diagnosis of gastritis, chronic; and influenza. On March 25 he was ordered transferred to the United States. April 28, he was admitted to the army hospital at Fort Pike, Arkansas, as "convalescent from influenza and bronchitis", and on May 1, his condition was diagnosed as "convalescent gastritis, chronic, hypochlorhydria." While there he became anxious for his family, lost all grasp of himself, and had a nervous breakdown according to the statement he made at the time of his admission to the veterans' hospital in 1929. On May 16, 1919, just prior to his discharge from the army, he signed a declaration that he was suffering from no disability or impairment of health.

His wife testified to many instances of peculiar conduct, delusions, and nervousness on the part of insured beginning with the first day of his return home. She further testified that when he attempted to work he became nervous and exhausted. He often complained of pain in his stomach, and was frequently treated by a Dr. Morgan, who was not living at the time of the trial. Insured never had a crop and never worked as long as a half-day at a time after his return from the army. His father was well to do. With his father's aid and by the sale and lease of his property insured supported himself and his family. His wife also testified to some instances when he had been irrational in his business dealings. A number of friends and neighbors likewise testified that from the time of his return from the army he had been very nervous and irrational, had frequently complained of stomach trouble, and had suffered from hallucinations.

Dr. McGraw, testifying for plaintiff, said that he had attended the insured in 1927 and had diagnosed the trouble at that time as dementia præcox. Dr. Rowland, senior physician at the state insane hospital, testified that insured had been an inmate there beginning February 2, 1928. He stated that the symptoms recited by the lay witnesses were typical of dementia præcox; that in his opinion, after hearing the lay testimony and seeing the record of the state hospital, insured was suffering from permanent and incurable dementia præcox, paranoid type; and that the most frequent cause of this disease in a person having a "præcox personality" is shock, such as that experienced by a soldier leaving home, or fear of gun fire. This disease develops slowly and not uncommonly takes a period of ten years or more to develop into its more severe stages. Hallucinations about physical ailments, such as stomach trouble, are a common symptom. Dr. Rowland also testified that sufferers from dementia præcox have occasional clear periods, but a man in this condition is not able to work "for any long period of time."

Dr. Murphy, the government's expert, testified that dementia præcox is a disease which usually begins when the person is between twenty and thirty years of age, and progresses slowly. Some sufferers from it are able to work during the periods of remission. Hallucinations, belief of pain in the stomach, nervousness, and inability to carry on a coherent conversation are symptoms found in many dementia præcox cases.

When insured was admitted to the veterans' hospital in May, 1929 a case history was prepared by one of the physicians which states: "Patient's difficulties evidently began in the service while in the Army of Occupation in Germany." The hospital Staff Conference Report made at that time declares: "His present trouble evidently began while overseas and had a close connection with the influenza he had. * * * Diagnosis: Dementia Præcox, Paranoid Type. * * *"

The rule as laid down by the Director of the Bureau of War Risk Insurance is that "Any impairment of mind or body which renders it impossible for the disabled person to follow continuously any substantially gainful occupation shall be deemed * * * to be total disability. Total disability shall be deemed to be permanent whenever it is founded upon conditions which render it reasonably certain that it will continue throughout the life of the person suffering from it." Lumbra v. United States, 290 U.S. 551, 558, 54 S.Ct. 272, 275, 78 L.Ed. 492. The testimony given by the wife and neighbors of the insured, in connection with the medical testimony, warranted the jury in finding that the disability of the insured was both total and permanent prior to the lapse of his policy on June 30, 1919. The evidence for plaintiff is stronger than that which was said to be sufficient in United States v. Brown, 1 Cir., 76 F.2d 352. Compare Rackoff v. United States, 2 Cir., 74 F.2d 720. The government contends that the evidence shows that insured had only a "predisposition to insanity," or a "dementia præcox personality" at the date of lapse. It is conceded that dementia præcox is in many instances a slowly progressive disease, and that insured eventually became afflicted with it. When the line was crossed between predisposition and total disability was a question for the jury to decide upon consideration of all the testimony. Gray v. United States, 8 Cir., 76 F.2d 233; Asher v. United States, 8 Cir., 63 F.2d 20; United States v. Newcomer, 8 Cir., 78 F.2d 50.

Under the rule quoted above the condition of the insured at the date of lapse may be viewed in the light of subsequent developments. Thus, a work record at a later date may entirely destroy the effect of evidence that would otherwise be sufficient to prove permanent disability at the time of lapse. Lumbra v. United States, supra; United States v. Brown, supra; United States v. Gwin, 6 Cir., 68 F.2d 124; Poole v. United States, 4 Cir., 65 F.2d 795. Likewise an ailment the nature of which was not recognized during the life of the policy may be shown by later events to have been at the date of lapse founded upon conditions making it reasonably certain that disability would be total throughout life; and for that reason recovery on the policy may be had. United States v. Brewer, 8 Cir., 87 F.2d 672; United States v. Newcomer, supra; see Eggen v. United States, 8 Cir., 58 F.2d 616, 619. This being true, insured's formal declaration of no disability at the time of discharge is not fatal to an action on the policy. It is merely an inconsistency to be weighed by the jury. United States v. Dudley, 9 Cir., 64 F.2d 743; Rackoff v. United States, supra.

It does not appear that insured has a work record which disturbs the inference of disability. The testimony is that he attempted to work on the farm, and tried to peddle a little, but on each occasion collapsed from physical and nervous exhaustion. He earned no money by his labor. That he obtained some support from the sale and lease of his property does not disprove his disability. The government also points to the fact that he was three times elected to the School Board as indicating that he was regarded in the community as a capable person. The jury was entitled to draw such inferences as it would about the requirements of that office from the fact that insured was re-elected in 1928 while at home on parole from the state insane hospital, after having been adjudged insane. Evidence was also introduced that in 1924 he applied for and was issued a policy of life insurance from the New York Life Insurance Company. In his application he stated that he had no physical and mental ailments, and the company's examining physician found nothing wrong. Other testimony shows that he tried to conceal his failings, and the physicians who later examined him at the state hospital and the veterans' hospital found it difficult to get information from him. In view of this evidence, plus the further fact that persons with dementia præcox sometimes have periods of remission, the government's evidence weighs against but does not refute plaintiff's case. United States v. Bodge, 10 Cir., 85 F.2d 433; United States v. Albano, 9 Cir., 63 F.2d 677.

Finally, the government calls attention to the long delay in filing a claim as a circumstance which makes the plaintiff's burden too heavy to be supported by the evidence in this case. Lumbra v. United States, supra; United States v. Johnson, 8 Cir., 94 F.2d 539. The claim was filed June 29, 1931. Plaintiff explained that she did not make claim for insurance immediately after insured came out of the army because she didn't know she could do it. Later, when she wanted to send insured to a government hospital where he could be examined as a prerequisite to receiving compensation,

he would break down and cry and object to being sent away. The inferences which may be drawn from delay are less compelling where the disability is mental. United States v. Brewer, supra; United States v. Newcomer, supra; Plocher v. United States, 6 Cir., 87 F.2d 860. In this case there is also evidence from which the jury might infer that the nature of the disorder was not recognized and fully appreciated by anyone until many years after the lapse of the policy. The district court did not err in submitting the case to the jury.

The judgment appealed from is affirmed.